UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FLOWSERVE CORPORATION and FLOWSERVE MANAGEMENT COMPANY, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CIVIL ACTION NO. 09-cv-0675 |
| HALLMARK PUMP COMPANY, INC., | § § | |
| Defendant and Third-Party Plaintiff, | § § | |
| v. | § § § | |
| NETWORK SOLUTIONS, LLC, | § § § | |
| Third-Party Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion to Dismiss or Alternatively to Transfer Venue of Third-Party Defendant Network Solutions, LLC ("Network") (Doc. No. 25). For the reasons stated below, the Court is of the opinion that this Motion should be denied.

I.  **BACKGROUND**[1]

Third-party Plaintiff Hallmark Pump Company, Inc. ("Hallmark") is a distributor of industrial pumps based in League City, Texas. (Hallmark Compl., Doc. No. 18, ¶ 7.) Third-party Defendant Network is a Virginia company that offers a broad spectrum of internet-based services. (*Id.* ¶ 9.) In September 2008, Hallmark decided to redo its then current website, and it contacted Network via telephone to inquire about its Do-It-For-Me

---

[1] These are the facts of the case as asserted by Third-party Plaintiff Hallmark Pump Company, Inc. ("Hallmark"), the non-movant in this matter. (*See* Legal Standard for Federal Rule 12(b)(3), section II.A of this Memorandum, below.)

1

website development service ("DIFM"). (*Id.* ¶ 12; Hallmark Resp., Doc. No. 29, at 5.) Hallmark placed its order for the DIFM service over the phone, providing a Network representative with its credit card information. (Hallmark Compl. ¶ 13.) According to Hallmark, it was never informed of any service agreement or terms or conditions that would cover the DIFM service. (Hallmark Resp. at 5.) Hallmark was told by the Network representative that the website would be created according to its specifications. (Hallmark Compl. ¶ 13.) Hallmark then received a receipt for its order via email, and its credit card was charged for the DIFM order on September 9, 2008. (*Id.* ¶ 14.)

Between September and November 2008, Hallmark and Network communicated on numerous occasions regarding the content of Hallmark's website. (Hallmark Resp. at 5.) On November 8, 2008, the site was published, including certain .pdf files that Hallmark had previously asked Network not to use, before Hallmark had the opportunity to review the final version. (Hallmark Compl. ¶ 23.) On December 4, 2008, Hallmark contacted Network via telephone and requested that the .pdf images be removed immediately, as third parties were contacting Hallmark requesting that they be removed. (*Id.* ¶ 25.) It also requested that certain typographical errors and misspellings be corrected. (*Id.*) On or about December 29, 2008, the site had not yet been corrected. Hallmark contacted Network via email again requesting that the images be taken down, but received no response. (*Id.* ¶ 26.) Hallmark repeatedly made this same request to Network between December 2008 and March 2008, until the images were finally removed on March 16, 2009. (*Id.* ¶¶ 27-34).

In March 2009, Plaintiffs Flowserve Corporation and Flowserve Management Company ("Flowserve" collectively) filed a First Amended Complaint against Hallmark,

alleging copyright infringement and unfair competition under Texas law. (Flowserve First Am. Compl., Doc. No. 6.) Flowserve's allegations are based on the display of the .pdf files discussed above. (Hallmark Compl. ¶ 36.) Hallmark then filed a Third-party Complaint against Network, asserting claims for relief for negligence and negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and seeking indemnification and contribution. Network now files this Motion to Dismiss or Alternatively to Transfer Venue, arguing that Hallmark's claims should be dismissed on several grounds.

## II.    MOTION TO DISMISS: IMPROPER VENUE

### A.    Federal Rule 12(b)(3)—Legal Standard

The United States Code instructs a district court to dismiss or transfer a case if venue is improper where filed. 28 U.S.C. § 1406(a). A party may move for dismissal of a suit based on improper venue under Federal Rule of Civil Procedure 12(b)(3). The movant bears the burden of showing improper venue in connection with a motion to dismiss. *Texas Marine & Brokerage, Inc. v. Euton*, 120 F. Supp. 2d 611, 612 (E.D. Tex. 2000) (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)); *see also Myers v. American Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1983), *cert. denied*, 462 U.S. 1106 (1983); *Sanders v. Seal Fleet, Inc.*, 998 F. Supp. 729, 733 (E.D. Tex. 1998). In meeting this burden, the movant must show facts that will defeat a plaintiff's assertion of venue. *See Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1191-92 (10th Cir. 1998). On a motion to dismiss for improper venue based on a forum selection clause, a court must accept as true all allegations in the complaint and resolve all factual conflicts in favor of the non-movant. *Braspetro Oil Services Co. v. Modec (USA), Inc.*, 240 Fed.

Appx. 612, 615 (5th Cir. 2007) (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004) (noting that the conclusion that the party seeking to avoid enforcement of a forum selection clause is entitled to have facts viewed in the light most favorable to it is consistent with case law and authoritative treatises)); *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997).

### B. Forum Selection Clauses—Legal Standard

Network's primary argument is that Hallmark's Complaint should be dismissed because the Service Agreement ("Agreement") that governs the parties' relationship contains a forum selection clause that designates the United States District Court for the Eastern District of Virginia as the exclusive venue for this case. Federal law governs the construction and enforceability of forum selection clauses. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991). Mandatory forum selection clauses are prima facie valid and enforceable absent a showing of unreasonableness under the circumstances. *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972). To determine whether a forum selection clause is unreasonable, courts should consider whether (1) the incorporation of the clause was a product of fraud or overreaching; (2) the party seeking to avoid enforcement will be "deprived of his day in court" due to grave inconvenience or unfairness in the selected forum; (3) the fundamental unfairness of the law chosen will deprive plaintiff of a remedy; (4) enforcement would contravene a "strong public policy" of the forum state. *Haynesworth v. The Corporation*, 121 F.3d 956, 961-62 (5th Cir. 1997).

More pertinently, in this case, in order for a forum selection clause to be enforceable, it must have been reasonably communicated to the non-drafting party. *Shute*,

499 U.S. at 590 (noting that the non-movant was given notice of the forum provision before entering the contract); *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995) (noting that "the legal effect of a forum selection clause depends in the first instance upon whether its existence was reasonably communicated to the plaintiff"). Inadequate notice of a forum-selection clause goes to the fraud exception to the validity of these clauses. *See Krenkel v. Kerzzner Int'l Hotels, Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). Courts use a two-part test to assess whether a contract clause has been reasonably communicated to one against whom enforcement is sought. The first prong looks at the facial clarity of the contract, and the second examines a plaintiff's familiarity with the contract and its ability to become meaningfully informed of the contractual terms at stake. *See Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 930-31 (5th Cir. 1997); *In re Broadcast.com, Inc.*, 2000 WL 35586773, at *3 (E.D. Tex. Aug. 31, 2000).

### C. Enforceability of the Forum Selection Clause

The dispute between the parties in this case goes directly to whether Hallmark had adequate notice of the terms of the Agreement when it entered into its contract with Network. The parties admit that the transaction occurred over the phone; Hallmark placed its order and gave Network its credit card information during the phone call. (Hallmark Resp. at 5.) What the parties dispute is whether the representative with whom Hallmark spoke, Erik Manley, gave Hallmark notice of the terms of the standard Agreement during this phone call. Hallmark contends, with supporting affidavits, that "[a]t no point in the conversation did Erik Manley even mention that there existed terms and conditions in a service agreement that affected Hallmark's rights." (Pl. Resp. at 9; Jim Hallmark Decl., Hallmark Resp. Ex. A, ¶ 8; Chad Hallmark Decl., Hallmark Resp. Ex B., ¶ 8.) Network,

5

on the other hand, maintains that during the phone call on which Hallmark purchased this package, the Network representative clicked the button on the computer screen pursuant to company policy indicating Hallmark's assent to be bound by the terms of the Agreement, and that this means that Hallmark affirmatively assented to the relevant clause. (Network Mot. at 7; Jeffrey Burger Aff., Network Mot. Ex. A, ¶¶ 6-9.) Network does not, however, attach a sworn affidavit by Erik Manley indicating whether or not he did in fact inform Hallmark that it was bound by the terms of the Agreement prior to taking its order. Instead, Network attaches the sworn testimony of Jeffrey Burger, a Software Development Manager at Network, describing how phone orders are generally handled. (Network Mot. Ex. A.)

At this stage of the litigation, this Court is bound to resolve this factual dispute in favor of Plaintiff. *Braspetro Oil Services*, 240 Fed. Appx. at 615. Accordingly, the Court must find that Hallmark was not made aware of the existence or the terms of the Agreement prior to providing Network with its credit card information. Under Hallmark's version of the facts, Hallmark was not given the opportunity to learn of and comprehend its rights and obligations under the Agreement prior to entering into a contract with Network, and the forum selection clause is therefore unenforceable.

Moreover, Network's contention that Hallmark later accessed the email confirmation it received with a link to the Agreement on numerous occasions does not cure the deficiency of notice. Hallmark received the confirmation after it had ordered the services and its credit card had been charged. It would be unreasonable to hold Hallmark to a forum selection clause of which it had no knowledge until after it had already made the decision to order Network's services, even if it was provided with adequate notice at

6

this later time. *See Terrebonne v. Commodore Cruise Lines Ltd.*, 1993 WL 534051, at *1 (E.D. La. Dec. 14, 1993) (noting that to determine whether a forum selection clause is enforceable a court must consider whether passengers had sufficient notice of the clause *prior* to entering the contract of passage); *Larsen v. Kerzner Intern. Hotels Ltd.*, 2009 WL 1759585, at *5 (S.D. Fla. June 19, 2009) (emphasizing that failure to give prior notice of a forum selection clause "militates against finding the clause reasonable and enforceable" because the plaintiff is given no opportunity to consider and reject the clause). Therefore, that a link to the Agreement terms was provided after the order was taken and the monies paid does not render the forum section clause enforceable.

Accordingly, the cases on which Network relies to support its argument that Texas courts routinely enforce forum selection clauses incorporated into service agreement found exclusively on the Internet are inapposite. In *Krause v. Chippas*, 2007 WL 45637, at *4 (N.D. Tex. Dec. 28, 2007), the court enforced a forum selection clause because defendant presented evidence that at the time that plaintiff made a payment through defendant's website, the lead page of the website clearly stated that use of the website signified agreement to the service agreement *and* included the text of the forum selection clause itself. Similarly, in *Greer v. 1-800-Flowers.com, Inc.*, 2007 WL 3102178, at *2-3 (S.D. Tex. Oct. 3, 2007), the court enforced a privacy policy as part of the terms of use of an order for flowers because plaintiff was "referred to the website for information regarding [d]efendant's privacy policy," and accessing the website clearly constituted an agreement to be bound by the terms of use containing the forum selection clause. Thus, unlike in this case, plaintiffs in those cases were given some notice of the existence of the service agreement to which they were assenting, either explicitly or

through the affirmative actions taken to access the websites. Moreover, this notice was given to them *prior* to actually taking the actions that rendered them subject to the terms of the agreements. Here, on the other hand, Hallmark maintains in its brief that at the time it engaged Network's services and therefore purportedly became subject to the Agreement's terms, it had neither heard of nor seen any terms and conditions. A link provided in a subsequent email does not cure the deficiency of prior notice. The Court therefore holds that the forum selection clause at issue here cannot be enforced against Hallmark.

### D. Applicability of the Forum Selection Clause

Because the Court has found that the forum selection clause is unenforceable, it need not reach the issue of whether the clause is applicable to the claims for relief asserted by Hallmark in this case. The Court notes, however, that the Fifth Circuit has struck down attempts by plaintiffs to avoid forum selection clauses by pleading tort claims rather than breach of contract. *See Ginter v. Belcher Predergast & Laporte*, 536 F.3d 439, 444-45 (5th Cir. 2008). While the Court does not decide the issue definitively, it nonetheless acknowledges that, were the forum selection clause enforceable, it would likely apply to the claims brought by Hallmark in this case, as its allegations of tortious fraud are essentially that Network failed to perform its obligations in providing web-based services as promised.

### III. MOTION TO TRANSFER

#### A. Legal Standard

In the alternative, Network argues that this case should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. Section 1404(a). Under 28 U.S.C.

Section 1404(a), a correctly filed case may be transferred to another proper venue "[f]or the convenience of parties and witnesses, in the interest of justice." Defendant, as the movant under Section 1404(a), bears the burden of establishing the propriety of the transfer. *In re: Volkswagen of America, Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (en banc). The movant must "show good cause." *Id.* (citing *Humble Oil & Ref. Co. v. Bell Marine Serv.*, 321 F.2d 53, 56 (5th Cir. 1963)). Good cause means that "a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.' Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315 (distinguishing the heavier burden under the *forum non conveniens* standard where the movant must show that the factors "substantially outweigh" the plaintiff's choice of venue).

Although a plaintiff's initial choice of forum is entitled to deference, the degree of deference is higher when he has chosen his home forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). Conversely, when a plaintiff is not a resident of the chosen forum, or when the operative facts underlying the case did not occur in the chosen forum, a court gives less deference to a plaintiff's choice. *See In re Horseshoe Entm't*, 337 F.3d 429, 434-35 (5th Cir. 2003); *Apparel Production Services Inc. v. Transportes De Carga Fema, S.A.*, 546 F. Supp. 2d 451, 453 (S.D. Tex. 2008); *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 828 (S.D. Tex. 1993).

The Supreme Court set forth private and public factors to be weighed in a *forum non conveniens* determination in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), and

9

reaffirmed them in *Piper*, 454 U.S. 235 (1981). The Fifth Circuit then adopted the *forum non conveniens* factors for the Section 1404(a) context. *Humble Oil*, 321 F.2d at 56; *In re Volkswagen*, 545 F.3d at 314 n. 9. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen*, 545 F.3d at 314 (citing *Piper Aircraft,* 454 U.S. at 241 n. 6). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* Even a valid forum selection clause is not dispositive and does not compel transfer if the factors listed in 1404(a) militate against transfer. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

B.  **Application**

First, the Court notes that Hallmark is a Texas corporation with its principal place of business in League City, Texas. (Hallmark Compl. ¶ 1.) Because Hallmark has chosen to bring its case against Network its home forum, its choice is given a high degree of deference. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

Second, while valid forum selection clauses can be considered in deciding whether to transfer a case under Section 1404(a), the Court has found that the forum selection clause of the Agreement is unenforceable because Hallmark was not given adequate notice. As such, the forum selection clause in the Agreement is given very little weight in the Court's analysis.

Third, the Court notes that the Third-party Complaint filed by Hallmark primarily seeks indemnification and contribution against alleged copyright infringement in a case filed by Flowserve. Hallmark's claims for damages against Network therefore depend upon the damages assessed, if any, in Flowserve's claims against Hallmark. Network's Motion does not seek to transfer the claims of Flowserve against Hallmark to the Eastern District of Virginia. (Flowserve Resp., Doc. No. 28.) Transfer of Hallmark's Complaint would therefore mean that these cases would be tried in two different jurisdictions, before two different judges, although Flowserve's claims would need to be resolved before a complete assessment of the scope of Hallmark's case against Network could be ascertained. This strongly suggests that the convenience of the parties and judicial efficiency would be better served by allowing Hallmark's claims to continue in this Court, where Flowserve's claims are also being adjudicated.

Turning then to the other private factors in this case, Network points out that it is a Virginia company with its principal place of business in Virginia. Network's employees are therefore located in Virginia, and, according to Network, it would cause extreme hardship if they were required to travel to Texas to testify at trial. (Network Mot. at 14.) Conversely, however, Hallmark is based in Texas and its employees are located here. The private factors do not therefore dispositively weigh in favor of either forum. The public factors are likewise inconclusive. While Virginia points out that Virginia citizens have an interest in litigating whether a Virginia company is engaging in deceptive trade practices or fraudulent behavior, it is also true that the citizens of both states have an interest in allowing cases to be tried with as much administrative ease as possible, which would be better served by allowing this case to remain in this Court.

Weighing all of these factors, the Court finds that Hallmark's case should not be transferred under Section 1404(a). In light of the deference to be given to a plaintiff's choice of forum, and the fact that judicial efficiency would be better served be allowing Hallmark's claims to be brought in the same forum as Flowserve's claims, the Court holds that Network's motion to transfer should be denied.

### IV. MOTION TO DISMISS: FAILURE TO PLEAD

Network also argues in the alternative that Hallmark's deceptive trade practices and negligent misrepresentation claims should be dismissed under Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failure to meet the appropriate pleading requirements.

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge,

and other condition of the mind of a person may be averred generally." FED. R. CIV. P. 9(b). The Fifth Circuit treats dismissal for failure to plead fraud with particularity under Rule 9(b) as a dismissal for failure to state a claim upon which relief can be granted. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Essentially, the standard requires the complaint to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris,* 27 F.3d 1097, 1100 n.5 (5th Cir. 1994). Claims alleging violation violations of the DTPA are subject to the requirements of Rule 9(b). *Krames v. Bohannon Holman, LLC,* 2009 WL 762205, at *10 (N.D. Tex. March 24, 2009); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824-25 (N.D. Tex. 2001) (citing cases).

The Court holds that the allegations in Hallmark's Third-party Complaint satisfy both the pleading requirements of *Iqbal* as well as the heightened pleading standard under Rule 9(b). In its Complaint, Hallmark provides a detailed account of its communications with Network over the course of approximately seven months. It presents the specific representations made by Network that led Hallmark to engage Network's DIFM web design service. (Hallmark Compl. ¶¶ 11-12.) It provides specifics as to the ways in which it was dissatisfied with the website Network created. (*Id.* ¶ 25.) It provides, where possible, the name of the Network employee spoken to for each request that certain .pdf's

be removed from the site. (*Id.* ¶¶ 17-24.) It provides the exact dates on which it contacted Network to make these requests, and the type of response it received. (*Id.*) Hallmark even summarizes and identifies precisely how it believes Network acted fraudulently throughout its communications with Hallmark. (*Id.* ¶¶ 38-42.)

Whether these allegations can be proven definitively is not now before us. What is clear to the Court is that Network is provided with more than enough information to be on notice of the charges against it and to prepare a defense against Hallmark's claims. Hallmark has certainly met the pleading standard in *Iqbal*, and has furthermore sufficiently addressed the "newspaper questions" necessary for their pleadings to comply with Rule 9(b). The Court therefore holds that Hallmark's DTPA and negligent misrepresentation claims need not be dismissed for insufficient pleadings, and that Network's alternative motion for a more definite statement under Federal Rule of Civil Procedure 12(e) should be denied.[2]

## V.  MOTION TO DISMISS: FAILURE TO STATE A CLAIM

Finally, Network argues that Hallmark's negligent misrepresentation claims and DTPA claim should be dismissed because neither is recognized under Virginia law, which governs this dispute under the terms of the Agreement. The Court notes that its decision regarding Network's Motion to Dismiss on the basis of improper venue calls into question, thought does not definitely decide, the issue of whether the choice-of-law provision in the Agreement should govern in this case. However, the parties do not address in their briefs the question of which law should govern should the Agreement not apply. Therefore, the Court is unable to make a final determination as to this aspect of

---

[2] Federal Rule of Civil Procedure 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."

Network's Motion. The Court therefore denies without prejudice Network's Motion to Dismiss for failure to state a claim under Virginia law. Hallmark is invited to amend its Complaint to include any parallel Virginia state claims. The parties may then choose, at a later stage of briefing, to submit further arguments as to the applicable choice-of-law, whether under the Agreement or not.

## VI. CONCLUSION

For the reasons stated above, this Court holds that:

1. Third-party Defendant Network's Motion to Dismiss for improper venue and alternative Motion to Transfer (Doc. No. 25) is **DENIED**;

2. Network's Motion to Dismiss for insufficient pleading is **DENIED**;

3. Network's Motion to Dismiss for failure to state a claim under Virginia law is **DENIED WITHOUT PREJUDICE**;

4. Hallmark is invited to amend its Complaint to include parallel Virginia state claims; and

5. The parties may later submit further briefing on the choice-of-law issue.

**IT IS SO ORDERED.**

**SIGNED** this 3rd day of February, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE