IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FLOWSERVE CORPORATION and FLOWSERVE MANAGEMENT COMPANY, | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:09-cv-675 |
| v. | § § | JURY TRIAL DEMANDED |
| HALLMARK PUMP COMPANY, INC. | § § | |
| Defendant and Third-Party Plaintiff | § § | |
| v. | § § | |
| NETWORK SOLUTIONS, LLC | § § | |
| Third-Party Defendant | § | |

**PLAINTIFFS FLOWSERVE CORPORATION & FLOWSERVE MANAGEMENT COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Flowserve Corporation and Flowserve Management Company (collectively "Flowserve") hereby move for summary judgment, pursuant to Federal Rule of Civil Procedure 56, with respect to Flowserve's copyright infringement and Lanham Act claims against Defendant Hallmark Pump Company, Inc. ("Hallmark").

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................... 1

II.     ISSUES PRESENTED ............................................................................. 1

III.    LEGAL     STANDARDS     FOR     SUMMARY     JUDGMENT,     FALSE
        ADVERTISING & COPYRIGHT INFRINGEMENT ................................. 2

        A.      Summary Judgment ..................................................................... 2

        B.      Copyright Infringement ............................................................... 2

        C.      False Advertising Under the Lanham Act ................................... 4

IV.     STATEMENT OF UNDISPUTED MATERIAL FACTS ................................ 5

V.      ARGUMENT AND ANALYSIS ................................................................ 11

        A.      Hallmark has Willfully Infringed Flowserve's Copyrights ................ 11

                1.      Actionable Copying ......................................................... 11

                        a.      Factual Copying ................................................ 11

                        b.      Substantial Similarity ....................................... 12

                2.      Hallmark's Infringement was Willful ................................ 14

        B.      Hallmark's Actions Constitute a Willful Violation of the Lanham Act ............... 15

VI.     REMEDIES ......................................................................................... 17

        A.      Flowserve is Entitled to a Permanent Injunction Enjoining Hallmark From
                Infringing Any of Flowserve's Copyrights and From Using Images of
                Flowserve's Products in Hallmark's Advertising ................................. 17

        B.      Flowserve is Entitled to Statutory Damages of $30,000 ..................... 21

        C.      Flowserve is Entitled to its Costs of Suit and Reasonable Attorneys' Fees ......... 23

VII.    CONCLUSION...................................................................................... 25

i

# TABLE OF AUTHORITIES

## Cases

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
   166 F.3d 772 (5th Cir. 1999) ............................................................................ 18

*Berg v. Symons*,
   393 F. Supp. 2d 525 (S.D. Tex. 2005) ........................................................... 4, 15

*Blackmer v. Monarch Holdings, Inc.*,
   Case No. H-00-4290, 2002 WL 32361935 (S.D. Tex. July 11, 2002) .................... 23

*Bridgmon v. Array Sys. Corp.*,
   325 F.3d 572 (5th Cir. 2003) .............................................................................. 3

*Broad. Music, Inc. v. Xanthas, Inc.*,
   855 F.2d 233 (5th Cir. 1988) .............................................................................. 3

*Chevron Intellectual Prop., LLC v. Allen*,
   No. 7:08-CV-98-O, 2009 WL 2596610 (N.D.Tex.2009) ............................... passim

*Compaq Computer Corp. v. Procom Tech., Inc.*,
   908 F. Supp. 1409 (S.D. Tex. 1995) ................................................................... 4

*Creations Unlimited, Inc. v. McCain*,
   112 F.3d 814 (5th Cir. 1997) .............................................................................. 3

*Cynthia Hunt Prods., Ltd. v. Evolution of Fitness Houston, Inc.*,
   Case No. H-07-0170, 2007 WL 3047220 (S.D. Tex. Aug. 16, 2007) ..................... 18

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ........................................................................................ 18

*Entm't & Sports Programming Network, Inc. v. Edinburg Cmty. Hotel, Inc.*,
   735 F. Supp. 1334 (S.D. Tex. 1986) ............................................................. 19, 24

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*,
   344 U.S. 228 (1952) ................................................................................... 22, 23

*Ferguson v. Nat'l Broad. Co., Inc.*,
   584 F.2d 111 (5th Cir. 1978) ................................................................... 3, 11, 12

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) ........................................................................................ 23

*Galiano v. Harrah's Operating Co., Inc.*,
   416 F.3d 411 (5th Cir. 2005) .............................................................................. 2

*Hogan Sys., Inc. v. Cybresource Int'l, Inc.*,
   158 F.3d 319 (5th Cir. 1998) ............................................................................ 23

*Lava Records LLC v. Ates*,
   2006 WL 1914166 (W.D. La. 2006) ............................................................. 20, 24

*Malaco Inc. v. Cooper,*
   Case No. 3:00-CV-2648-P, 2002 WL 1461927 (N.D. Tex. July 3, 2002) .............................. 22

*Mary Kay, Inc. v. Weber,*
   661 F. Supp. 2d 632 (N.D. Tex. 2009) ................................................................ 18, 19, 20, 21

*Microsoft Corp. v. Software Wholesale Club Inc.,*
   129 F. Supp. 2d 995 (S.D. Tex. 2000) ............................................................................... 5

*Norma Ribbon & Trimming, Inc. v. Little,*
   51 F.3d 45 (5th Cir. 1995) ............................................................................................... 2

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,*
   469 U.S. 189 (1985) ..................................................................................................... 21

*Paulsson Geophysical Servs., Inc. v. Sigmay,*
   529 F.3d 303 (5th Cir. 2008) ..................................................................................... 18, 19

*Peel & Co. v. Rug Market,*
   238 F.3d 391 (5th Cir. 2001) ...................................................................................... 3, 11

*Petro Franchise Sys., LLC v. All Am. Properties, Inc.,*
   607 F. Supp. 2d 781 (W.D. Tex. 2009) ........................................................................... 18

*Philip Morris USA Inc. v. Lee,*
   547 F. Supp. 2d 685 (W.D. Tex. 2008) ................................................................... 4, 5, 17

*PIU Mgmt., LLC v. Inflatable Zone, Inc.,*
   2010 WL 681914 (S.D. Tex. Feb. 25, 2010) ............................................................... 19, 20

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*
   227 F.3d 489 (5th Cir. 2000) .......................................................................................... 4

*Polo Ralph Lauren L.P. v. Schuman,*
   1998 WL 110059 (S.D. Tex. 1998) ................................................................................ 25

*Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.,*
   83 F. Supp. 2d 810 (S.D. Tex. 1999) ............................................................................. 21

*Red Giant, Inc. v. Molzan, Inc.,*
   Case No. H-07-2657, 2009 WL 2242349 (S.D. Tex. July 24, 2009) .................................... 18

*Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co., Inc.,*
   520 F.3d 393 (5th Cir. 2008) ........................................................................................ 24

*Silver Ring Splint Co. v. Digisplint, Inc.,*
   567 F. Supp. 2d 847 (W.D. Va. 2008) ............................................................................ 23

*Truck Equip. Serv. Co. v. Fruehauf Corp.,*
   536 F.2d 1210 (8th Cir. 1976) ........................................................................................ 4

*Vault Corp. v. Quaid Software Ltd.,*
   655 F. Supp. 750 (E.D. La. 1987) .................................................................................. 20

*Warner Bros. Records, Inc. v. Briones,*
   77 U.S.P.Q.2d 1253 (W.D. Tex. 2005) ............................................................................ 20

*Webloyalty.com, Inc. v. Consumer Innovations, LLC,*
  388 F. Supp. 2d 435 (D. Del. 2005) .................................................................. 4, 15

## **Statutes**

15 U.S.C. § 1116(a)..................................................................................................... 17

15 U.S.C. § 1117(a)................................................................................................. 17, 24

15 U.S.C. § 1125(a)....................................................................................................... 4

17 U.S.C. § 410(c)......................................................................................................... 2

17 U.S.C. § 501.............................................................................................................. 1

17 U.S.C. § 502(a)................................................................................................... 17, 18

17 U.S.C. § 504............................................................................................................ 21

17 U.S.C. § 504(a)(2).................................................................................................... 17

17 U.S.C. § 504(c)(1)............................................................................................... 21, 22

17 U.S.C. § 504(c)(2)..................................................................................................... 22

17 U.S.C. § 505....................................................................................................... 17, 23

## **Rules and Regulations**

Fed. R. Civ. Pro. 56(c)..................................................................................................... 2

## I.      INTRODUCTION

Flowserve designs, manufactures and sells industrial pumps, valves and related products. Flowserve has invested significant resources in the marketing of its products, including its Durco brand Mark 3 ANSI chemical process pumps ("Durco Mark 3 pump").  Flowserve's Durco Mark 3 pump and its predecessor Mark 1 and Mark 2 pumps have been mainstays in the chemical process industry for decades and are among the most well-recognized chemical process pumps worldwide.

Defendant Hallmark sells competing chemical process pumps, including the ANSI-FLO Model DIII pump ("DIII pump").  Rather than invest its own resources for the marketing of its DIII pump, Hallmark instead copied and displayed copyrighted images of Flowserve's Durco Mark 3 pumps on Hallmark's website, thereby falsely representing Flowserve's Durco Mark 3 pumps as Hallmark's DIII pumps.  Hallmark's actions constituted copyright infringement under Title 17 of the United States Code ("the Copyright Act") and false advertising under Section 43(a) of the Lanham Act.  Hallmark's actions were willful in both cases.

In this motion, Flowserve seeks the entry of a final judgment including: (a) statutory damages provided by Section 504 of the Copyright Act in the amount of $30,000; (b) a permanent injunction pursuant to Section 502 of the Copyright Act and Section 34(a) of the Lanham Act; and (c) the costs, attorneys' fees and expenses incurred by Flowserve in protecting its intellectual property rights, as provided by Section 505 of the Copyright Act and Section 35(a) of the Lanham Act, in the amount of $75,000.

## II.      ISSUES PRESENTED

1.      Whether Hallmark violated 17 U.S.C. § 501 by improperly displaying Flowserve's copyrighted images on the Hallmark website.

1

2.      Whether Hallmark violated Section 43(a) of the Lanham Act by making literally false and misleading descriptions or representations of fact about its pumps by displaying images of Flowserve's Durco Mark 3 pumps and representing them as Hallmark's DIII pumps on its website.

3.      Whether Hallmark's copyright infringement and false advertising were willful.

4.      Whether Flowserve is entitled to a permanent injunction prohibiting Hallmark from committing any further violations of Flowserve's rights under the Copyright Act and the Lanham Act.

5.      Whether $30,000 is the appropriate amount of statutory damages for Hallmark's willful infringement of Flowserve's copyrighted images.

6.      Whether Flowserve is entitled to its reasonable attorneys' fees and expenses of $75,000 pursuant to the Copyright Act and the Lanham Act.

## III.    LEGAL STANDARDS FOR SUMMARY JUDGMENT, FALSE ADVERTISING & COPYRIGHT INFRINGEMENT

### A.      Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

### B.      Copyright Infringement

Copyright infringement requires a plaintiff to prove (1) ownership of a valid copyright and (2) actionable copying. *Galiano v. Harrah's Operating Co., Inc.*, 416 F.3d 411, 414 (5th Cir. 2005). A certificate of registration "constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see also Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995). Actionable copying requires a

2

showing of (1) factual copying and (2) substantial similarity. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003).

"[F]actual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Peel & Co. v. Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001). Access may be shown if the accused infringer had "an opportunity to view the copyrighted work." *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 113 (5th Cir. 1978). Alternatively, factual copying may be established without a showing of access "if the two works are so strikingly similar as to preclude the possibility of independent creation." *Id.*

Once factual copying is established, the plaintiff must show that the copyrighted work and the allegedly infringing work are substantially similar. *Bridgmon*, 325 F.3d at 577. "To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997). Summary judgment is appropriate if the court can determine that no reasonable juror could differ in weighing the evidence. *Peel*, 238 F.3d at 395.

Willful infringement occurs when the defendant has acted with "actual knowledge" or "reckless disregard" for whether its conduct infringed upon the plaintiff's copyright. *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988). Ignoring a cease-and-desist letter can constitute "willful and deliberate" infringement. *See Chevron Intellectual Prop., LLC v. Allen,* No. 7:08-CV-98-O, 2009 WL 2596610, at *3-4 (N.D.Tex.2009) (holding that defendant's Lanham Act violation was willful and deliberate where it ignored a cease-and-desist letter from plaintiff). Moreover, the defendant's knowledge need not be proven directly, but may be

inferred from the defendant's conduct. *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 441 (D. Del. 2005). In drawing an inference of willfulness, the court may take into account what is common knowledge and customary in a particular industry. "Willfulness in this context means that the defendant recklessly disregarded the possibility that its conduct represented infringement." *Berg v. Symons*, 393 F. Supp. 2d 525, 540 (S.D. Tex. 2005).

**C.**    <u>False Advertising Under the Lanham Act</u>

False advertising occurs when a defendant makes a "false or misleading description . . . or representation of fact" "in commercial advertising or promotion [that] misrepresents the nature, characteristics, qualities, or geographic origin of his . . . goods." 15 U.S.C. § 1125(a); *see also Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). A prima facie showing of false advertising requires a plaintiff to establish: "(1) A false or misleading statement of fact about a product; (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) The deception is material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue." *Pizza Hut*, 227 F.3d at 495. Materiality and deception are presumed if an advertisement is literally false. *Id.*; *see also id.* at 497. An advertisement is literally false where, *inter alia*, a defendant uses a photograph of the plaintiff's product to market the defendant's own product. *Compaq Computer Corp. v. Procom Tech., Inc.*, 908 F. Supp. 1409, 1426 (S.D. Tex. 1995); *see also Truck Equip. Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1215-16 (8th Cir. 1976).

Similar to willful copyright infringement, a willful Lanham Act violation occurs when the defendant "knows his actions constitute an infringement." *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 693 (W.D. Tex. 2008). Ignoring a cease-and-desist letter constitutes "willful and deliberate" infringement. *Chevron Intellectual Prop.*, 2009 WL 2596610, at *3-4.

4

Nevertheless, "[a] finding of willfulness does not [necessarily] require actual knowledge, but rather [only] willful blindness." *Microsoft Corp. v. Software Wholesale Club Inc*., 129 F. Supp. 2d 995, 1010 (S.D. Tex. 2000). Accordingly, courts "have found willful conduct where a defendant acts with 'reckless disregard for, or with willful blindness' toward" a Lanham Act violation. *Philip Morris*, 547 F. Supp. 2d at 693.

## IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS

The following material facts are undisputed:

1. Flowserve manufactures and sells industrial pumps, including the Durco Mark 3 ANSI chemical process pump ("Durco Mark 3 pump"). Flowserve's Durco Mark 3 pump, and its predecessor designs, the Durco Mark 1 and Mark 2 pumps, collectively have been in production for more than 50 years and are some of the most widely recognized pumps in the chemical process and refining industries worldwide.

2. As part of its marketing campaign for its pumps, Flowserve uses advertising materials in which Flowserve owns the copyright, including the three copyrighted images depicted below ("Flowserve's Copyrighted Images"). Two of these copyrighted images have been registered and deposited with the Copyright Office. (*See* Certificate of Registration, U.S. Copyright No. TXu1-200-818 ("Certificate of Registration"), attached as Ex. 1; Declaration of B. Joe Schaeff ("Schaeff Decl."), attached as Ex. 2 (confirming that two of the images below were included in the deposit materials for U.S. Copyright No. TXu1-200-818 ("Deposit Materials")).) The third image is substantially similar to images in the Deposit Materials, and is also found in Flowserve's copyrighted Durco Mark 3 brochure ("Flowserve Durco Mark 3 Brochure") attached as Exhibit A to the Amended Complaint.

5

(*See* Schaeff Decl., Ex. 2; Ex. A to Am. Compl., at pp. 15 (image), 36 (indicating copyright).)  Flowserve's Copyrighted Images at issue are shown below:

| Flowserve's Copyrighted Images |
|---|



*Exhibit A to Amended Complaint, at pg. 5.*



*Exhibit A to Amended Complaint, at pg. 15.*



*Exhibit A to Amended Complaint, at pg. 4.*

3.  Hallmark markets and sells competing pumps, including a knock-off of Flowserve's Durco Mark 3 ANSI pump that Hallmark sells throughout the United States as the ANSI-FLO Model DIII pump ("DIII pump").  (*See, e.g.*, Hallmark's Answer to Compl., ¶ 17).

4. Hallmark entered into an agreement with recently dismissed Third-Party Defendant Network Solutions, LLC ("Network Solutions") on or about September 7, 2008, to create a new website for Hallmark ("the Hallmark website"). (*See* Hallmark's Third-Party Compl., ¶¶ 12-14.) As part of the process of designing the new website, Hallmark provided Network Solutions with a brochure for Hallmark's ANSI-FLO Model DIII pump in Microsoft Word (.doc) format (the "ANSIFLODIIIBROCHURE2 Word File"), on or about October 15, 2008. (*See* Log of Hallmark Brochure Upload to Network Solutions Server ("Upload Log"), attached as Ex. 3; *see also* Hallmark's Third-Party Compl., ¶21. *See generally* Fedock Decl., attached as Ex. 12 (authenticating documents).) The Upload Log indicates that "ANSI-FLO DIII BROCHURE 2.doc" was "uploaded successfully" by Hallmark and saved with the file name "ANSIFLODIIIBROCHURE2-2.doc." (*See* Upload Log, Ex. 3.) Neither Hallmark nor Network Solutions has produced the actual ANSIFLODIIIBROCHURE2 Word File during discovery. (*See* Fedock Decl., Ex. 12, at ¶ 7.)

5. On December 1, 2008, Sarah C. Hedrick, a product account manager at Network Solutions, advised Charles French, a website designer at Network Solutions, to "convert the word doc to a pdf." (*See* Sarah C. Hedrick E-mail to Charles French ("Hedrick E-mail"), attached as Ex. 4.) This conversion is confirmed by the Hallmark website, which contains a brochure with the filename "ANSIFLODIIIBROCHURE2-2.pdf" (the "Hallmark DIII Brochure," attached as Ex. B to Am. Compl.). Indeed, the Hallmark DIII Brochure is still available to the public at http://www.hallmarkpumpcompany.com/media/ANSIFLODIIIBROCHURE2-2.pdf.

(*See* Fedock Decl., Ex. 12,  at ¶ 9.)  That brochure contains the three images depicted

7

below, which are "strikingly similar" – if not identical – to the images contained in Flowserve's Copyrighted Images:

| Images on the Hallmark Website | |
| --- | --- |
|  *Exhibit B to Amended Complaint, at pg. 2.* |  *Exhibit B to Amended Complaint, at pg. 2.* |
|  *Exhibit B to Amended Complaint, at pg. 2.* | |

6. After Network Solutions incorporated the Hallmark DIII Brochure into the Hallmark website, the website with these three images was approved by Chad Hallmark on or around December 3, 2008. (*See* Chad Hallmark E-mail to Network Solutions ("Chad

Hallmark E-mail"), attached as Ex. 5. ("The complete site looks good except that the address for the Houston office is still incorrect.").)  The inclusion of the Hallmark DIII Brochure was further approved by Jim Hallmark on December 8, 2008. (*See* Jim Hallmark E-mail to Network Solutions ("Jim Hallmark E-mail"), attached as Ex. 6.)

7.   After being approved by both Chad and Jim Hallmark, the Hallmark website – including the Hallmark DIII Brochure – was made available to the public on or about December 15, 2008.  (*See* Network Solutions Customer Log File ("Customer Log"), attached as Ex. 7, at pg. 17 (NETWORK000490) (highlighted for clarification).)

8.   On February 9, 2009, Flowserve sent a cease-and-desist letter to Hallmark requesting that the infringing images be removed from the Hallmark website.  (*See* Flowserve's Feb. 9, 2009 Cease-and-Desist Letter to Hallmark ("Cease-and-Desist Letter"), attached as Ex. 8.)  Hallmark ignored Flowserve's Cease-and-Desist Letter and did not remove the link to the infringing work within the time specified in that letter.  (*See* Fedock Decl., Ex. 12, at ¶ 8.)  In fact, Hallmark did not remove the link to the infringing work until after the Complaint was filed in this case – and *still* has not removed the infringing work itself. (*See*  http://www.hallmarkpumpcompany.com/media/ANSIFLODIIIBROCHURE2-2.pdf; *see also* Fedock Decl., Ex. 12, at ¶¶ 8-9.)

9.   Hallmark has also willfully disregarded the intellectual property rights of other competitors.  For example, Hallmark placed an advertisement in the December 2008 issue of *Pumps and Systems* magazine.  (*See* Jim Hallmark E-mail to ITT Goulds Pumps ("Goulds E-mail"), attached as Ex. 9.)  That advertisement contained images of a pump manufactured by another industry leader, ITT Goulds Pumps ("Goulds"), which owned the copyright on those images.  (*See id.*)  Hallmark assured Goulds it would no longer use

Goulds' images in its advertising.  (*See id.*)  Notwithstanding this assurance to Goulds, Hallmark placed a brochure of its ANSI-FLO G196 pump on its website. (http://hallmarkpumpcompany.com/media/ANSIFLOG196BROCHURE-1.pdf, a copy of which is attached as Ex. 10 (the "Hallmark G196 Brochure"); *see also* Upload Log, Ex. 3 (indicating that "ANSI-FLO G196 BROCHURE.doc" was "uploaded successfully" and saved with the file name "ANSIFLOG196BROCHURE-1.doc").)  This brochure not only contains images of Goulds pumps and components, but is remarkably similar in format to the Hallmark DIII Brochure at issue in this case.  (*See* Goulds E-mail, Ex. 9.  *Compare* Hallmark DIII Brochure (Ex. B to Am. Compl.), *with* Hallmark G196 Brochure (Ex. 10 attached hereto).)  On December 29, 2008, Hallmark received a cease-and-desist demand from Goulds to remove the Hallmark G196 Brochure from the Hallmark website.  (*See* Goulds E-mail, Ex. 9.)  Although Hallmark removed the link to the Hallmark G196 Brochure, the brochure itself still has not been removed.  (*See* http://hallmarkpumpcompany.com/media/ANSIFLOG196BROCHURE-1.pdf;  *see also* Fedock Decl., Ex. 12, at ¶ 5.)

10. As was the case with Flowserve, Hallmark not only impermissibly copied and displayed Goulds' copyrighted images, but also attempted to misappropriate the goodwill associated with the name of Goulds' product.   As noted above, Flowserve manufactures a Durco Mark 3 pump, which led Hallmark to call its competing product the DIII pump. Similarly, Goulds manufactures the Goulds 3196 Series pump, which led Hallmark to name its competing product the G196 pump.  (*Compare* Hallmark G196 Brochure (Ex. 10), *with* http://www.gouldspumps.com/download_files/literature_misc/3196i_poster-low.pdf (Ex. 11).)  This pattern of behavior serves as further evidence of Hallmark's

10

repeated and willful attempts to misappropriate its competitors' intellectual property and associated goodwill, rather than develop and market its own intellectual property and brand name.

## V.   ARGUMENT AND ANALYSIS

### A.   Hallmark has Willfully Infringed Flowserve's Copyrights

Hallmark has willfully infringed Flowserve's copyrights by displaying Flowserve's Copyrighted Images on Hallmark's website without Flowserve's permission.  As evidenced by the Certificate of Registration (Ex. 1), the Declaration of B. Joseph Schaeff ("Schaeff Decl.") (Ex. 2), and the Flowserve Durco Mark 3 Brochure (Ex. A to Am. Compl.), Flowserve is the owner of a valid copyright covering, *inter alia*, the three images of Flowserve's products at issue here.  Hallmark's impermissible copying and displaying of Flowserve's Copyrighted Images constitutes actionable copying, and was willful.

### 1.   *Actionable Copying*

#### a.   *Factual Copying*

Hallmark's display of Flowserve's three copyrighted images on its commercial website constitutes factual copying.  First, as noted above, copying may be established without a showing of access "if the two works are so strikingly similar as to preclude the possibility of independent creation."  *Ferguson*, 584 F.2d at 113.   That is precisely the case here.  Indeed, two of the images are identical to two of Flowserve's Copyrighted Images and, as explained below, the other is identical except for a change in the color of the highlighting.  The evidence of record also supports a finding of factual copying under the other formulation of the test for copyright infringement, as there is: "(1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity" between the copyrighted images and the infringing images.  *Peel & Co. v. Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001).

11

Indeed, Hallmark did have access to Flowserve's Copyrighted Images, which have been accessible to the public via the filing of the copyright registration in 2005, on Flowserve's publicly accessible website, and in widely distributed advertising materials such as pump product catalogs. (*See, e.g.*, http://www.flowserve.com/Products/Pumps/Industries/Pulp-and-Paper/Chemical-and-Liquor/Mark-3-ASME-Standard-Overhung-Chemical-Process-Pump%2Cen_US; http://www.flowserve.com/vgnfiles/Files/Literature/FPD/ps-10-13-e.pdf.) Hallmark thus had the opportunity to view – and impermissibly copy – Flowserve's Copyrighted Images for use in Hallmark's advertising and on Hallmark's website. *See Ferguson*, 584 F.2d at 113 ("Access has been defined to include an *opportunity* to view the copyrighted work." (emphasis added)). Furthermore, there is "probative similarity" between Flowserve's Copyrighted Images and the images displayed on Hallmark's website. In fact, two of the images depicted on Hallmark's website are absolutely identical to Flowserve's Copyrighted Images, and the third set of images is identical other than a minor change in the color of the highlighting.

b.   *Substantial Similarity*

The three images-at-issue from Hallmark's website are substantially similar to the corresponding Flowserve's Copyrighted Images found in Flowserve's Deposit Materials and Flowserve's Durco Mark 3 Brochure, and displayed on Flowserve's website. (*See* Schaeff Decl., Ex. 2) Indeed, two of the images displayed on Hallmark's website are *identical* to the corresponding image in Flowserve's Copyrighted Images:

12

| **Flowserve's Copyrighted Images** | **Images on the Hallmark Website** |
|:---:|:---:|
|  |  |
| *Exhibit A to Amended Complaint, at pg. 5.* | *Exhibit B to Amended Complaint, at p. 2.* |
|  |  |
| *Exhibit A to Amended Complaint, at pg. 15.* | *Exhibit B to Amended Complaint, at p. 2.* |

Moreover, the third image-at-issue from Hallmark's website is virtually identical to the corresponding image in Flowserve's Copyrighted Images, except for one immaterial difference – the change from red highlighting to blue highlighting:

| Flowserve's Copyrighted Image | Image on the Hallmark Website |
|---|---|
|  | |
| *Exhibit A to Amended Complaint, at pg. 4.* | *Exhibit B to Amended Complaint, at pg. 2.* |

(*Compare* Ex. A to Am. Compl. ("Ex. A"), at pg. 4, *with* Ex. B to Am. Compl. ("Ex. B"), at pg. 2.)  Both of these images depict a "cutaway" of the Flowserve Durco Mark 3 pump.  (*See* Ex. A, at pg. 4; Ex. B, at pg. 2.)  Tellingly, other highlighting shown in both images – such as the yellow and light blue highlighting – was not changed, which further corroborates the fact that Hallmark copied Flowserve's copyrighted image.  (*See* Ex. A, at pg. 4; Ex. B, at pg. 2.)

2.    *Hallmark's Infringement was Willful*

Moreover, Hallmark's acts of copyright infringement were willful.  Indeed, even after the cease-and-desist demand letter from Flowserve, Hallmark continued to use the images on its website.  *See Chevron Intellectual Prop., LLC v. Allen,* No. 7:08-CV-98-O, 2009 WL 2596610, at *3-4 (N.D. Tex. 2009) (finding the defendants' infringement "willful and deliberate" where the defendant failed to respond to plaintiff's request to cease-and-desist).  Hallmark had also previously engaged in the same behavior by misappropriating the advertising materials of Goulds, which caused Goulds to send Hallmark a similar cease-and-desist demand letter.  (*See*

Goulds E-mail, Ex. 9.)   Because Hallmark was on actual notice that its website contained copyrighted advertising materials of its competitor Flowserve and did not remove it, Hallmark acted with reckless disregard.   Further, one can reasonably infer from Hallmark's infringement of Goulds' copyright that Hallmark was aware that its copying of the Flowserve images also constituted copyright infringement.   *See Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 441 (D. Del. 2005).   This is even more true considering the striking similarity in the format of these two Hallmark brochures.   (*Compare* Hallmark DIII Brochure (Ex. B to Am. Compl., at pg. 2), *with* Hallmark G196 Brochure (Ex. 10 hereto).)   Hallmark therefore "recklessly disregarded the possibility that its conduct represented infringement."   *Berg v. Symons*, 393 F. Supp. 2d 525, 540 (S.D. Tex. 2005).   Accordingly, Hallmark's actions constituted a willful infringement of Flowserve's Copyrighted Images.

**B.** <u>Hallmark's Actions Constitute a Willful Violation of the Lanham Act</u>

Hallmark violated Section 43(a) of the Lanham Act by making (1) a literally false statement or representation (2) about a product sold in interstate commerce that (3) caused economic and other damage to Flowserve.   Hallmark uses its website to advertise, offer for sale and sell its industrial pumps to various entities located throughout the United States. (*See, e.g.*, Hallmark's Answer to Compl., ¶17).   Hallmark's website contains pictures of Flowserve's Durco Mark 3 pumps.   (*See* Ex. B to Am. Compl., at pg. 2; Fedock Decl., Ex. 12, at ¶¶ 8-9.)   Hallmark falsely represented that those pictures depicted Hallmark's DIII pump.   (*See* Ex. B to Am. Compl., at pg. 2; Hallmark's Third-Party Compl., ¶ 21.)   Despite Flowserve's request to remove these pictures from the Hallmark website, Hallmark did not remove the link to those pictures until after Flowserve filed the Complaint in this matter.   (*See* Fedock Decl., Ex. 12, at ¶ 8; *Chevron Intellectual Prop., LLC v. Allen,* No. 7:08-CV-98-O, 2009 WL 2596610, at *3-4 (N.D. Tex. 2009) (finding the defendants' infringement "willful and deliberate" where the defendant

15

failed to respond to plaintiff's request to cease-and-desist).)   Moreover, those images are still available at the same web address, although the main page of the Hallmark website no longer links to that web address. (*See* http://www.hallmarkpumpcompany.com/media/ANSIFLODIIIBROCHURE2-2.pdf; *see also* Fedock Decl., Ex. 12, at ¶ 9.)

Hallmark made literally false statements by representing on its website that the images of Flowserve's pumps actually depict Hallmark's own pumps.  Because Hallmark uses its website to advertise products on the Internet and to sell products throughout the United States, those literally false statements pertained to a product that is sold in interstate commerce.  (*See* Hallmark's Answer to Compl., ¶17.)   These actions harmed Flowserve by the display of Flowserve pumps on the Hallmark website, which resulted in false and misleading representations to the consuming public regarding Hallmark's pumps; and also by causing Flowserve to incur attorneys' fees and related expenses to protect its rights.  (*See* Mims Decl. on Attorneys' Fees, attached as Ex. 13.)   Accordingly, Hallmark's actions constituted false advertising under Section 43(a) of the Lanham Act.

Hallmark's Lanham Act violations were also willful. Through its correspondence with Goulds and Flowserve prior to this litigation, Hallmark was on actual notice that its website contained false representations of facts regarding its products.  (Cease-and-Desist Letter, Ex. 8; Goulds E-mail, Ex. 9.)  Hallmark acted at least with reckless disregard and willful blindness, and thus recklessly, with respect to its false advertisement of the DIII pump on its website.  Moreover, both Chad Hallmark and Jim Hallmark independently reviewed and subsequently approved the website containing the Hallmark DIII Brochure before it was made available to the public. (*See* Chad Hallmark E-mail, Ex. 5; Jim Hallmark E-mail, Ex. 6.)  Additionally, Hallmark

16

knew or should have known that the images of Flowserve's pumps (as well as the images of Goulds' pumps) were not images of its own pumps, but rather images of competitors' similar pumps.  Hallmark most certainly had actual knowledge that the images used in its brochure were literally false.  Hallmark's actions therefore constituted false advertising in violation of Section 43(a) of the Lanham Act.  Moreover, at the very least, Hallmark acted with reckless disregard and willful blindness towards such violations.  Hallmark's actions are therefore a willful violation of Section 43(a) of the Lanham Act.  *Philip Morris*, 547 F. Supp. 2d at 693.

## VI.    REMEDIES

Based on Hallmark's copyright infringement and Lanham Act violations, Flowserve seeks (1) injunctive relief; (2) statutory damages in the amount of $30,000 for the infringement of Flowserve's Copyrighted Images; and (3) costs, including attorneys' fees, in the amount of $75,000.  A court may issue a permanent injunction "to prevent or restrain infringement of a copyright" or "to prevent a violation" of Section 43(a) of the Lanham Act.  17 U.S.C. § 502(a); 15 U.S.C. § 1116(a).  The Copyright Act also allows for the recovery of statutory damages as compensation for the defendant's infringement.  17 U.S.C. § 504(a)(2).  Moreover, both the Copyright Act and the Lanham Act entitle a plaintiff to recover its reasonable attorneys' fees and actual costs.  17 U.S.C. § 505; 15 U.S.C. § 1117(a).  These remedies will be addressed in turn.

A.    Flowserve is Entitled to a Permanent Injunction Enjoining Hallmark From Infringing Any of Flowserve's Copyrights and From Using Images of Flowserve's Products in Hallmark's Advertising

Flowserve asks this Court to enter an Order enjoining Hallmark from infringing any of Flowserve's copyrights and from displaying images of Flowserve's products in Hallmark's advertising, including on Hallmark's website.  Section 502(a) of the Copyright Act specifically provides that "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions for section 1498 of title 28, grant . . . final injunctions on such terms as it may

17

deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a); *see also Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999).  Similarly, Section 34(a) of the Lanham Act authorizes courts "to grant injunctions . . . to prevent a violation" of Section 43(a) of the Lanham Act.  Courts also regularly issue injunctions as part of summary judgments, including in cases where statutory damages, attorneys' fees, and costs were also awarded.  *See Red Giant, Inc. v. Molzan, Inc.*, Case No. H-07-2657, 2009 WL 2242349, at *11 (S.D. Tex. July 24, 2009); *Cynthia Hunt Prods., Ltd. v. Evolution of Fitness Houston, Inc.*, Case No. H-07-0170, 2007 WL 3047220, at *1 (S.D. Tex. Aug. 16, 2007).

A party seeking a permanent injunction must establish "(1) that is has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also id.* at 392 ("This approach is consistent with our treatment of injunctions under the Copyright Act."); *Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 639-41 (N.D. Tex. 2009) (applying the *eBay* factors to a Lanham Act violation).

As demonstrated above, Flowserve has suffered and continues to suffer irreparable injuries from Hallmark's actions.  For instance, the Fifth Circuit has found irreparable injury in a trademark infringement case when "[t]here was a substantial threat to [the plaintiff's] goodwill and the value of its . . . mark."  *Paulsson Geophysical Servs., Inc. v. Sigmay*, 529 F.3d 303, 313 (5th Cir. 2008).  Irreparable injury has also been found where the defendant's actions "caused a likelihood of confusion among customers."  *Mary Kay*, 661 F. Supp. 2d at 640; *see also Petro Franchise Sys., LLC v. All Am. Properties, Inc.*, 607 F. Supp. 2d 781, 794-95 (W.D. Tex. 2009).

Moreover, irreparable harm may be "presumed when a copyright is infringed." *Entm't & Sports Programming Network, Inc. v. Edinburg Cmty. Hotel, Inc.*, 735 F. Supp. 1334, 1343 (S.D. Tex. 1986) ("*ESPN*").   As demonstrated above, Hallmark's actions create a substantial threat to Flowserve's goodwill and brand name that have been established over the course of more than 50 years. *See, e.g.*, Section IV, ¶¶ 1 & 3, *supra*.  Hallmark's use of literally false advertisements also harms Flowserve by deceiving Flowserve's potential consumers regarding the source and quality of the pumps being offered for sale.  *See* discussion Sections III.C and V.B, *supra*. Moreover, absent an injunction, Flowserve will also be irreparably harmed by Hallmark's continued display of Flowserve's Copyrighted Images on the Hallmark website.  (*See* http://www.hallmarkpumpcompany.com/media/ANSIFLODIIIBROCHURE2-2.pdf; *see also* Fedock Decl., Ex. 12, at ¶¶ 8-9.)  Thus, Flowserve has suffered, and will continue to suffer, irreparable injury absent a permanent injunction.

Moreover, the remedies available at law, including monetary damages, are inadequate to compensate Flowserve for its injuries.  Injunctions are especially appropriate where the damage to plaintiff cannot be quantified, and therefore cannot adequately "be undone by monetary remedies." *Paulsson*, 529 F.3d at 313; *see also PIU Mgmt., LLC v. Inflatable Zone, Inc.*, 2010 WL 681914, at *7 (S.D. Tex. Feb. 25, 2010) (finding that the remedies available at law were inadequate where "[t]he amount lost due to confusion as opposed to fair competition [was] . . . difficult, if not impossible, to establish with dependable certainty").  As noted above, Flowserve has been and continues to be irreparably harmed by Hallmark's actions.  The damage to Flowserve's consumer goodwill and widely recognized brand name cannot be quantified, and therefore cannot adequately be undone by a monetary remedy.  *See Mary Kay*, 661 F. Supp. 2d at 640; *Paulsson*, 529 F.3d at 313.  The damage to Flowserve as a result of consumer confusion is

19

similarly "difficult, if not impossible, to establish with dependable certainty." *See PIU Mgmt.*, 2010 WL 681914, at *7. Thus, this factor favors granting a permanent injunction.

Additionally, considering the balance of hardships between Flowserve and Hallmark, a remedy in equity is warranted. Indeed, this "balance weighs strongly in favor of Plaintiffs where all that is requested is that the Defendant comply with the Copyright Act," or by the same logic, the Lanham Act. *Lava Records LLC v. Ates*, 2006 WL 1914166, at *3 (W.D. La. 2006). This factor favors the granting of an injunction where Plaintiff "will suffer irreparable harm if an injunction is not entered, as it will lose the ability to control the company image. On the other hand, a permanent injunction will only require the defendants to bring their business in line with the requirements of the law." *Mary Kay*, 661 F. Supp. 2d at 640. Without an injunction, Flowserve would lose the ability to protect its intellectual property, goodwill and brand name. *See id.* Conversely, granting an injunction would merely require Hallmark to refrain from violating the law by using Flowserve's intellectual property in its advertisements or on its website. *See id.* Thus, this factor also favors granting a permanent injunction.

Finally, an injunction will not disserve the public interest, as the public will not be harmed by Hallmark's inability to copy and display Flowserve's intellectual property. Quite to the contrary, "a permanent injunction is appropriate because of the strong public interest in copyright protection." *Lava Records*, 2006 WL 1914166, at *3; *see also Warner Bros. Records, Inc. v. Briones*, 77 U.S.P.Q.2d 1253, 1256 (W.D. Tex. 2005) ("[T]he 'public interest is the interest in upholding copyright protections.'"); *Vault Corp. v. Quaid Software Ltd.*, 655 F. Supp. 750, 757 (E.D. La. 1987) ("[T]he public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."). Similarly, "[t]he public interest is

always served by requiring compliance with Congressional statutes such as the Lanham Act." *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999).  The public interest is also served by enabling a plaintiff to protect its public image. *Mary Kay*, 661 F. Supp. 2d at 640.  Indeed, "[t]he Supreme Court has held that the Lanham Act exists to" protect a business' goodwill, and "'to protect the ability of *consumers* to distinguish among competing producers.'"  *Id.* (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985)) (emphasis added).  Granting an injunction will therefore serve the public interest by requiring Hallmark's compliance with the Copyright Act and the Lanham Act; by protecting Flowserve's copyrights, public image and goodwill; and by protecting "the ability of consumers to distinguish among competing producers," *Park 'N Fly*, 469 U.S. at 198.

As established above, Hallmark's actions, if not enjoined, will result in irreparable harm to Flowserve that cannot adequately be compensated by any remedies available at law. Enjoining Hallmark from continued infringement of Flowserve's intellectual property will serve the public interest, and will not cause Hallmark any undue hardship.  The Court should therefore grant a permanent injunction prohibiting Hallmark from committing any further violations of Flowserve's rights under the Copyright Act and the Lanham Act.

**B.**    Flowserve is Entitled to Statutory Damages of $30,000

Because Hallmark willfully infringed Flowserve's copyrights, this Court should award statutory damages[1] for copyright infringement in the amount of $30,000.  The Copyright Act allows for the recovery "of statutory damages for all infringements involved in this action, with respect to any one work, for which any one infringer is liable individually . . . in a sum of not

---

[1]   The Copyright Act allows for the recovery of either statutory damages, or actual damages and the infringer's profits.  17 U.S.C. § 504.  "The copyright owner may elect . . . to recover" statutory damages instead of actual damages and the infringers profits.  17 U.S.C. § 504(c)(1). Accordingly, Flowserve elects to recover statutory damages.

less than $750 or more than $30,000 or as the court considers just." 17 U.S.C. § 504(c)(1). This amount increases to $150,000 per work for willful infringement. 17 U.S.C. § 504(c)(2). Notwithstanding Hallmark's willful infringement of three separate copyrighted images, Flowserve is seeking only $30,000 (or $10,000 per image) rather than the $150,000 per offense that is statutorily permissible. Thus, Flowserve believes its request of $30,000 to be reasonable in light of Hallmark's willful conduct, and also in line with legal precedent.

Although the Copyright Act does not provide a formula for determining the amount of damages in a particular case, courts have broad discretion in determining a damage award within the range provided by statute. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228 (1952). In exercising their discretion, courts may consider, *inter alia*, the deterrent effect on the infringer and on third parties, expenses saved and profits gained from the infringement, the infringer's willfulness in committing the infringement, and whether the infringer provided records from which to assess the value of the infringing material produced. *Id.* at 233.

Applying these factors, courts granting summary judgment in copyright infringement actions have regularly awarded statutory damages in excess of the minimum allowed by the statute. For example, in a recent case in the Northern District of Texas, summary judgment was awarded against the sellers of videotapes containing four copyrighted songs. *Malaco Inc. v. Cooper*, Case No. 3:00-CV-2648-P, 2002 WL 1461927 (N.D. Tex. July 3, 2002). The court awarded $25,000 for each of the four compositions infringed and permanently enjoined the defendants from infringing upon any of the plaintiffs' musical compositions. *Id.* at *1. In making its award, the court focused on the defendants' willful conduct, the punitive nature of statutory damages, the deterrent effect of a large monetary award, and the fact that the defendants ignored plaintiffs' pre-suit attempts to resolve the dispute. *Id.* at *4-6. Similarly, in a

22

case where the defendant real estate developer displayed the plaintiff's copyrighted images in its advertisements for its housing communities, the court affirmed a $60,000 jury verdict for the plaintiff. *Blackmer v. Monarch Holdings, Inc.*, Case No. H-00-4290, 2002 WL 32361935 (S.D. Tex. July 11, 2002). Further, in a case where both parties were in the business of designing and manufacturing jewelry finger splints, the court found that the defendant had copied portions of the plaintiff's catalog for the defendant's own catalog and website. *Silver Ring Splint Co. v. Digisplint, Inc.*, 567 F. Supp. 2d 847, 854 (W.D. Va. 2008). Finding that the defendant had willfully infringed the plaintiff's copyright, the court awarded $30,000 in statutory damages. *Id.* at 855. As supported by this precedent and the *Woolworth* factors, an award of $30,000 is warranted here for Hallmark's willful infringement of Flowserve's three copyrighted images.

### C.   Flowserve is Entitled to its Costs of Suit and Reasonable Attorneys' Fees

Flowserve requests that this Court award its costs and reasonable attorneys' fees associated with this action. Section 505 of the Copyright Act expressly authorizes courts to award full costs to the prevailing party, which may include reasonable attorneys' fees. 17 U.S.C. § 505; *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). The Fifth Circuit has held that awarding attorneys' fees to the prevailing plaintiff in copyright cases is "the rule rather than the exception" and such fees therefore "should be awarded routinely." *Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 325 (5th Cir. 1998).

In *Fogerty*, the Supreme Court discussed the factors courts should consider in awarding costs and fees under this statute. Among the factors are "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19. Courts have traditionally applied such considerations in copyright infringement cases. Courts award plaintiffs their full costs and attorneys' fees in order to "(1)

deter future copyright infringement; (2) ensure that all holders of copyrights which have been infringed will have equal access to the court to protect their works; and (3) penalize the losing party and compensate the prevailing party." *Lava Records, LLC v. Ates*, Case No. 05-1314, 2006 WL 1914166, at *4 (W.D. La. July 11, 2006).

In the context of the Lanham Act, attorneys' fees may be awarded in "exceptional cases." 15 U.S.C. § 1117(a). "An exceptional case involves acts that can be called malicious, fraudulent, deliberate, or willful." *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co., Inc.*, 520 F.3d 393, 402 (5th Cir. 2008). As previously demonstrated, Hallmark's violation of the Lanham Act was both willful and deliberate.

This is a case where the Court should exercise its discretion to award Flowserve its reasonable attorneys' fees and costs incurred from defending its intellectual property rights. First, because Hallmark ignored Flowserve's demand letters, Flowserve was forced to file this action. *See ESPN*, 735 F. Supp. at 1337 (where defendant is warned of its infringing activities and is given ample opportunity to cease and desist prior to commencement of lawsuit, attorneys' fees are clearly justified); *Chevron Intellectual Prop., LLC v. Allen,* No. 7:08-CV-98-O, 2009 WL 2596610, at *3-4 (N.D. Tex. 2009). Second, an award of attorneys' fees and costs will serve the important functions of deterring future infringements, making Hallmark account for its unlawful conduct, and compensating Flowserve for the fees and costs it was forced to incur in order to protect its copyrights and end the consumer confusion caused by Hallmark's actions. Put differently, awarding Flowserve's reasonable attorneys' fees and costs will put Flowserve back in the position it would have been in but for Hallmark's willful violations of the Copyright Act and the Lanham Act and subsequent refusal to cease-and-desist from those activities. In light of the foregoing, Flowserve respectfully seeks reimbursement for its reasonable attorneys'

fees and costs in the amount of $75,000.  (*See* Mims Decl. on Attorneys' Fees, Ex. 13, at ¶¶ 4-6, 19-20; *Polo Ralph Lauren L.P. v. Schuman*, 1998 WL 110059, at *8, *14 (S.D. Tex. 1998) (awarding full attorneys' fees where the defendants actions were willful and plaintiff "presented uncontroverted evidence on the reasonable number of hours and fees engendered in prosecuting its claims" in the form of declarations).)  The amount Flowserve is seeking is not only the product of a reasonable number of hours and reasonable hourly rates, but is also less than its actual costs, attorneys' fees, and expenses incurred in this lawsuit.  (*See* Mims Decl., Ex. 13)

## VII.  CONCLUSION

Based on the foregoing discussion and recitation of authorities and the evidence submitted herewith, Flowserve respectfully requests entry of summary judgment with respect to Flowserve's claims against Hallmark for copyright infringement and false advertisement under the Lanham Act, an injunction in the form sought in the Complaint, statutory damages in the total amount of $30,000, and an award of attorneys' fees and costs in the amount of $75,000.

Dated November 4, 2010                              Respectfully submitted,

                                                    */s/ John A. Fedock*
                                                    Peter E. Mims
                                                    Attorney-in-Charge
                                                    State Bar No. 14173275
                                                    VINSON & ELKINS L.L.P.
                                                    300 First City Tower
                                                    1001 Fannin Street
                                                    Suite 2500
                                                    Houston, TX 77002-6760
                                                    Tel:  713-758-2732
                                                    Fax:  713-615-5703
                                                    pmims@velaw.com

25

John A. Fedock
State Bar No. 24059737
S.D. Tex. I.D. No. 896626
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, TX 78746-7568
Tel:  512-542-8832
Fax:  512-236-3345
jfedock@velaw.com

*Attorneys For Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 4th day of November, 2010, the foregoing document was electronically filed with the clerk of court for the U.S. District Court, Southern District of Texas, Houston Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *John A. Fedock*